Jeffrey Allen WILLIAMS, Plaintiff,

v.

R. BELTRAN, et al., Defendants.

Case No. CV 03–7394–GHK (MLG).

United States District Court,
C.D. California.

Aug. 1, 2008.

Jeffrey Allen Williams, Corcoran, CA, pro se.

Leena M. Sheet, CAAG—Office of Attorney General of California, Los Angeles, CA, for Defendants.

## ORDER RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

GEORGE H. KING, District Judge.

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings (the "Motion"). This Motion was initially referred to Magistrate Judge Marc L. Goldman, who issued a Report and Recommendation ("R & R") on February 5, 2008. We have conducted a de novo review of the papers filed in support of, and in opposition to the Motion. We have also considered Judge Goldman's R & R and the parties' objections to that R & R. We agree with and adopt the findings and conclusions reached by Judge Goldman in the R & R, with the exception of his conclusion regarding the availability of monetary damages under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc–2000cc–5.

## I. INTRODUCTION

Plaintiff Jeffrey Allen Williams ("Plaintiff") is a Muslim inmate at the state prison in Lancaster, California. Pursuant to prison grooming regulations then in effect within the California correctional system, Plaintiff was forced to shave his beard, which he had worn for religious reasons. Plaintiff filed this suit on October 15, 2003, alleging, among other things, a violation of RLUIPA.[1] Due to a change in the grooming regulations, we agree with and adopt the conclusion in the R & R that injunctive and declaratory relief for Plaintiff's RLUIPA claim are now moot. The availability of monetary damages, however, presents a question on which the Fourth and Eleventh Circuits have reached opposite conclusions. *Compare Madison v. Virginia,* 474 F.3d 118 (4th Cir.2006) (concluding that monetary damages are precluded by the Eleventh Amendment in a suit brought against officials of the Commonwealth of Virginia under RLUIPA) *with Smith v. Allen,* 502 F.3d 1255 (11th Cir.2007) (concluding that monetary damages are available under RLUIPA in a suit against Alabama state officials). Numerous district courts are also divided on the issue. *Compare, e.g., Price v. Caruso,* 451 F.Supp.2d 889, 895 (E.D.Mich.2006) ("under RLUIPA, Plaintiff may have a claim against Defendant, in her official governmental capacity, for monetary damages"); *with, e.g., Boles v. Neet,* 402 F.Supp.2d 1237, 1241 (D.Colo.2005) ("it does not appear that [RLUIPA] permits a claim for damages").

## II. RLUIPA

RLUIPA offers heightened protection to religious exercise by providing, among other things, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person— (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."[2] 42 U.S.C.A. § 2000cc–1(a). Congress enacted RLUIPA after the Supreme Court held that the Religious Freedom Restoration Act of 1993 ("RFRA"), as applied to States, exceeded the remedial powers afforded to Congress by the Fourteenth Amendment. *See City of Boerne v. Flores,* 521 U.S. 507, 532–36, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). RLUIPA was enacted, in part, to cure this defect in RFRA by invoking congressional authority under the spending and commerce clauses. *See generally Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (upholding the constitutionality of RLUIPA, and discussing the history of the Act). RLUIPA is narrower in scope than RFRA, applying only where the substantial burden "is imposed in a program or activity that receives Federal financial assistance," or affects foreign, interstate, or Indian commerce. 42 U.S.C.A. § 2000cc–1(b).

In its remedial section, RLUIPA provides that, "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and *obtain appropriate relief* against a government." 42 U.S.C. § 2000cc–2(a) (emphasis added). This language mirrors the remedial clause

---

**1.** The operative pleading is now Plaintiff's First Amended Complaint ("FAC"), and only the RLUIPA claim is still pending. The procedural history of the other claims is fully and accurately described in Judge Goldman's R & R.

**2.** This is the familiar language of the strict scrutiny test. *See, e.g., Wisconsin v. Yoder,* 406 U.S. 205, 215, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).

in RFRA, which provides that, "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and *obtain appropriate relief* against a government." 42 U.S.C. § 2000bb–1(c) (emphasis added).

## III. ELEVENTH AMENDMENT IMMUNITY

█ The Eleventh Amendment states:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI.

The Eleventh Amendment also precludes citizens from bringing suit against their own State in federal court. *Hans v. Louisiana,* 134 U.S. 1, 13, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Supreme Court has explained that, "[d]espite the narrowness of its terms ... we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty; and that a State will therefore not be subject to suit in federal court unless it has consented to suit, either expressly or in the plan of the convention." *Blatchford v. Native Village of Noatak and Circle Village,* 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) (internal citations and quotations omitted).

█ There are three main exceptions to the broad grant of sovereign immunity under the Eleventh Amendment. "First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment—an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance. Second, a State may waive its sovereign immunity by consenting to suit." *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 670, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (citations omitted). Third, suit may be brought to enjoin a state official under *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) rather than against the State itself. The exception afforded by *Ex Parte Young,* however, does not permit a suit for monetary damages. *See Edelman v. Jordan,* 415 U.S. 651, 658–59, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *see also Miranda B. v. Kitzhaber,* 328 F.3d 1181, 1187–89 (9th Cir.2003). Further, as discussed above, because *City of Boerne* held that RFRA exceeded congressional authority under the Fourteenth Amendment, RLUIPA instead purports to invoke the spending and commerce clauses. Congress cannot abrogate Eleventh Amendment immunity pursuant to the spending and commerce clauses. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 72–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). As such, insofar as RLUIPA avoids the Eleventh Amendment, it can only be because the State has waived its immunity by consenting to suit.

█ A court may only conclude that a State has waived immunity under the Eleventh Amendment in limited circumstances. "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909)). A court may not "infer that a

State's immunity from suit in the federal courts has been negated." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (*"Pennhurst II "*). For a court to find waiver, a federal spending program must manifest "a clear intent to condition participation in the programs funded ... on a State's consent to waive its constitutional immunity." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Here, we must determine whether RLUIPA conditions receipt of federal prison funds on state waiver of sovereign immunity and construe whether such waiver extends to monetary damages.

## IV. WAIVER OF SOVEREIGN IM-MUNITY UNDER RLUIPA

▮ As quoted above, RLUIPA permits an action for "appropriate relief against a government." 42 U.S.C. § 2000cc–2(a). The statute defines "government" to include, among other things, "a State, county, municipality, or other governmental entity created under the authority of a State," and "any branch, department, agency, instrumentality, or official" of such entities. 42 U.S.C. § 2000cc–5(4)(A)(i)–(ii). RLUIPA also clearly applies to any "program or activity that receives Federal financial assistance." 42 U.S.C.A. § 2000cc–1(b). Given this express language, we conclude that RLUIPA unambiguously conditions receipt of federal prison funds on waiver of sovereign immunity pursuant to RLUIPA. The Fourth and Eleventh Circuits have reached the same conclusion. *Madison*, 474 F.3d at 130; *Smith*, 502 F.3d at 1276 n. 12 (citing *Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir.2004)). Defendants concede, and we find, that California receives federal prison funds, and so waiver applies here.

▮ That waiver applies is only the start of our inquiry, however. The more pressing question, on which the Fourth and Eleventh Circuits split, is whether the remedial clause in RLUIPA providing for "appropriate relief" is sufficiently broad and explicit to waive state immunity from money damages. As we have stated above, we conclude that it is not. The phrase "appropriate relief" is ambiguous, and does not provide the express language or overwhelming implication that waiver of sovereign immunity requires. The ambiguity of this phrase is only corroborated by the disagreement of the Fourth and Eleventh Circuits in interpreting its language. We conclude that a State need not submit to all remedies merely because it waives its immunity to some forms of relief by receiving federal funds. As such, we also conclude that California has not waived its immunity from suits for monetary damages under RLUIPA.

In reaching the opposite conclusion, both the Eleventh Circuit in *Smith*, 502 F.3d at 1270–71, and Judge Goldman here (R & R at 15:16–16:10) rely in part on *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). We conclude, however, that *Franklin* is inapposite to the narrow question we must address here. Although *Franklin* holds that remedies are to be viewed expansively, *id.* at 66, 112 S.Ct. 1028, it does not address the scope of a State's waiver of immunity under the Eleventh Amendment.

In *Franklin*, the Court considered the scope of remedies available for the implied right of action under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688. *Franklin*, 503 U.S. at 64, 112 S.Ct. 1028. The Court stated that, "we presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Id.* at 66, 112 S.Ct. 1028. However, the Court per-

formed no Eleventh Amendment analysis, nor did it otherwise analyze or discuss issues of sovereign immunity. *Franklin* mentions the Eleventh Amendment only once, in passing, while discussing abrogation by the Rehabilitation Act of 1973, and that Act's statement that, "remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State." *Franklin*, 503 U.S. at 72–73, 112 S.Ct. 1028 (citing 42 U.S.C. § 2000d–7(a)(2)).

■■■ We assume that the Supreme Court did not conduct an analysis under the Eleventh Amendment in *Franklin* because it was not at issue there.[3] In any event, because of the absence of any Eleventh Amendment discussion, we cannot conclude that *Franklin* implicitly provides a definite answer to a question it did not address. As such, we decline to extend the holding in *Franklin* to the context of the waiver of immunity from damages under the Eleventh Amendment.

Rather than showing that the remedial provision in RLUIPA should be viewed expansively, *Franklin* offers an example demonstrating that Congress is capable of being more explicit in drafting remedial clauses where the Eleventh Amendment is at issue. The "appropriate relief" language of RLUIPA is both terse and vague, whereas the Rehabilitation Act is more deliberately crafted. The Americans with Disabilities Act ("ADA") provides a further example, also explicitly stating that remedies "at law and in equity" are available against a State.[4] 42 U.S.C. § 12202.

---

**3.** The defendant/petitioner in *Franklin* was the Gwinnett County School District of Gwinnett County, Georgia. The Supreme Court "has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a slice of state power." *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 & n. 19, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) (internal quotations omitted). Whether a governmental entity such as a school district is treated as an arm of the state or a mere political subdivision under the Eleventh Amendment turns on a multi-factored balancing test, examining "[1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity." *Belanger v. Madera Unified School Dist.*, 963 F.2d 248, 250–51 (9th Cir.1992); *see also Mt. Healthy Board of Ed. v. Doyle*, 429 U.S. 274, 280–81, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (concluding that petitioner, a school district in Ohio, was "more like a county or city", and thus not entitled to assert Eleventh Amendment immunity). Relying on *Mt. Healthy*, the Eleventh Circuit has held that Alabama and Florida school districts are not entitled to Eleventh Amendment protection. *See Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1509–10 (11th Cir. 1990) (also citing decisions of the former Fifth Circuit rejecting claims of sovereign immunity by local school boards in Mississippi and Louisiana). To the contrary, the Ninth Circuit has held that California school districts enjoy Eleventh Amendment immunity. *Belanger*, 963 F.2d at 250–54. However, no federal court appears to have had an occasion to consider the Eleventh Amendment immunity of school districts in Georgia. In Title 50, Chapter 21, concerning waiver of sovereign immunity, however, the Georgia Code notes that the definition of State, "does not include counties, municipalities, *school districts*, other units of local government...." GA.CODE ANN. § 50–21–22 (2007) (emphasis added).

**4.** 42 U.S.C. § 12202 provides that "[a] State shall not be immune under the eleventh amendment [*sic*] to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are avail-

Such contrasts highlight the ambiguities in RLUIPA. They certainly fail to support an overwhelming implication that "appropriate relief" includes money damages.

Judge Goldman also reasons that it is inappropriate to bifurcate Eleventh Amendment issues by separately addressing the scope of waiver from the more limited inquiry into whether waiver has occurred. (R & R at 17:6–16.) Judge Goldman argues that the weight of the case law does not support such a separation. He further points out that such a separation "makes redundant the *Ex Parte Young* doctrine," which already permits a suit against a state officer in his official capacity for prospective injunctive relief. (*Id.* at 17:11–16). Respectfully, we do not agree.[5]

Moreover, in construing the RLUIPA waiver to preclude money damages, the Fourth Circuit in *Madison* relies in large part on decisions construing the extent of waiver by the United States in statutes involving federal sovereign immunity. *See Madison*, 474 F.3d at 131–32. Numerous such decisions hold that the scope of any federal waiver of sovereign immunity must be read narrowly, often precluding monetary relief where other relief is permitted. *See, e.g., Lane v. Pena*, 518 U.S. 187, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). In *Lane*, the Court held that the federal government had not waived its immunity against awards of monetary damages for violations of Section 504(a) of the Rehabilitation Act of 1973.[6] *Lane*, 518 U.S. at 200, 116 S.Ct. 2092. The Court stated that, "[t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims." *Id.* at 192, 116 S.Ct. 2092 (citing *United States v. Nordic Village*, 503 U.S. 30, 34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)).

Although *Lane* involves federal sovereign immunity, the Fourth Circuit concluded that, "[i]t is of no moment that some of the cases in this area involve the question of whether Congress has waived federal sovereign immunity, because '[i]n considering whether the Eleventh Amendment applies ... cases involving the sovereign im-

---

able for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State."

**5.** Requiring an explicit waiver of remedies at law does not necessarily render *Ex Parte Young* redundant, as several other features of RLUIPA go beyond the relief that would be allowed by *Ex Parte Young*. As discussed in section II, *supra*, RLUIPA was also passed to apply heightened review to government-imposed burdens on religious exercise. *See Cutter*, 544 U.S. at 714–15, 125 S.Ct. 2113; *see also* 146 CONG. REC. E1563–01, 2000 WL 1369378 (Sept. 21, 2000) (Representative Charles T. Canady of Florida, analyzing RLUIPA section-by-section). RLUIPA also extends explicitly to state governments themselves, and not merely to the state officials who may be enjoined under *Ex Parte Young*. Further, Eleventh Amendment doctrine is clear in its rule that Congress must pro-

nounce waiver in clear and explicit terms. Nothing suggests that there is an exception for this rule so as to allow vague language in a statute to be read specifically and expansively where to do otherwise might mean a potential overlap among existing statutes and doctrines.

**6.** The remedial provision applicable to a suit against the federal government examined in *Lane*, § 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), differs from the remedial section relevant to a suit against the States, § 1003 of the Rehabilitation Act Amendments of 1986, 42 U.S.C. § 2000d–7. *Lane*, 518 U.S. at 197–98, 116 S.Ct. 2092. In fact, the "unambiguous waiver of the States' Eleventh Amendment immunity in § 1003" assisted the Court in concluding that there was no waiver for monetary damages against the federal government under the Rehabilitation Act. *See Lane*, 518 U.S. at 197–200, 116 S.Ct. 2092.

munity of the Federal Government ... provide guidance.'" *Madison*, 474 F.3d at 131 (quoting *California v. Deep Sea Research*, 523 U.S. 491, 506, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998)) (ellipses in *Madison*).

We agree that case law on federal sovereign immunity is a useful guide here. Indeed, to the extent that there are differences between federal waiver and the situation here, we are persuaded that we should construe any waiver by a State under RLUIPA at least as restrictively as a federal waiver. As the Supreme Court has stated, "legislation enacted pursuant to the spending power is much in the nature of a contract...." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) ("*Pennhurst I* "). Unlike where a sovereign unilaterally waives its immunity, under RLUIPA a State waives its Eleventh Amendment immunity only pursuant to the receipt of federal funds. Thus, such waiver requires that a State "voluntarily and knowingly accepts the terms of the contract." *Pennhurst I*, 451 U.S. at 17, 101 S.Ct. 1531. A State cannot be said to have "voluntarily and knowingly" waived its immunity from suits for money damages if the terms of the contract extracting the waiver, and its extent, are ambiguous, as they are in RLUIPA.

In a case of waiver of federal sovereign immunity by Congress, an expansive reading of a vague waiver is unlikely to do great harm, as Congress can then unilaterally and explicitly narrow any such waiver. Nonetheless, *Lane* and other cases make clear that federal waivers of immunity are to be strictly construed in favor of the sovereign. Because we construe waiver in favor of a sovereign even where that sovereign is responsible for any ambiguity, it strikes us as perverse to construe ambiguity against a sovereign that had no role in drafting the statute effecting such waiver. Were we to read the waiver in RLUIPA expansively, the States would be powerless to narrow such waiver on their own. Hence, we are persuaded that precedent dictating a narrow reading of the scope of federal waiver of immunity is also applicable to state waiver of the Eleventh Amendment pursuant to the spending clause.

Nor is this approach contrary to Eleventh Amendment case law. We do not construe the cases on Eleventh Amendment waiver to imply that a court cannot inquire into the scope of waiver once it determines that waiver has occurred. Judge Goldman cites *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) and *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) in support of his conclusion that Eleventh Amendment analysis does not permit separate inquiry into remedial issues. (R & R at 17:6–11.) However, the Supreme Court concluded that Eleventh Amendment immunity was intact in both *Kimel*, 528 U.S. at 66–67, 120 S.Ct. 631 and *Seminole Tribe*, 517 U.S. at 47, 116 S.Ct. 1114, as in both cases the Supreme Court held that Congress had exceeded its authority under the Fourteenth Amendment in attempting to abrogate state sovereign immunity. As such, the Court did not need to reach any potential remedial issues in those decisions. We do not infer from these decisions that it is inappropriate to address remedial issues separately in the Eleventh Amendment waiver context.[7] As such, we see nothing

---

7. It appears the Supreme Court has simply not had an occasion to address this issue. Of the nine Supreme Court cases construing the Eleventh Amendment that we cite above, *supra* at section III, none found a valid waiver or abrogation of Eleventh Amendment immunity.

in the case law that counsels against our considering cases construing waiver of federal sovereign immunity.

Having concluded that decisions involving waiver of federal immunity are applicable here, we also note that the D.C. Circuit, in interpreting the remedial clause in RFRA, has concluded that the invocation of "appropriate relief" in that statute does not extend to money damages in a suit against the United States. *See Webman v. Federal Bureau of Prisons,* 441 F.3d 1022, 1026 (D.C.Cir.2006). We are persuaded by this reasoning, which stresses that language waiving sovereign immunity "must be unequivocal and ambiguous," and that the appropriate relief language in RFRA "falls short on this standard." *Id.* The Fourth Circuit also followed this reasoning in *Madison,* as RLUIPA borrows the remedial language regarding "appropriate relief" from RFRA.[8] We follow the Fourth and D.C. Circuits in reading "appropriate relief" as falling short of the unequivocal textual waiver required to waive sovereign immunity from money damages.

## V.  CONCLUSION

In light of the above, we conclude that California has not waived its Eleventh Amendment immunity from money damages under RLUIPA. Absent the availability of monetary relief, Plaintiff lacks any remedy for his alleged RLUIPA claim. All other claims and remedies have been dismissed. As such, Defendants' Motion is **GRANTED.** The First Amended Complaint is **DISMISSED,** with prejudice.

**IT IS SO ORDERED.**