**File Name: 08a0583n.06**
**Filed: September 30, 2008**
NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

**No(s) 07-3476/3477**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **DANIEL FARAH,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| **RANDALL A. WELLINGTON; MICHAEL** | ) | **O P I N I O N** |
| **BUDD; FREDERICK WHITE; and COUNTY OF** | ) | |
| **MAHONING**, | ) | |
| | ) | |
| *Defendants-Appellee*s. | | |

**BEFORE:** **COLE, GIBBONS, Circuit Judges; FORESTER, District Judge.**[*]

 **COLE, Circuit Judge.** Plaintiff-Appellant Daniel Farah, an Ohio prisoner proceeding pro se, appeals the district court's grant of summary judgment to Defendants-Appellees Randall A. Wellington, Sheriff of Mahoning County, Michael Budd and Frederick White, Deputy Sheriffs for Mahoning County, and Mahoning County (collectively "Defendants") on Farah's civil rights action, filed under 42 U.S.C. § 1983. Because the lower court did not err in partially denying Farah's motion for an extension of time to conduct discovery, and because Farah failed establish that a genuine issue of material fact exists as to his claims against Defendants, we **AFFIRM**.

---

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. BACKGROUND

**A. Factual Background**

Farah's claims arise from events occurring on November 8, 2002, when he was being transported from the Lorain Correctional Institution ("LCI") in Grafton, Ohio, the facility in which he was incarcerated, to the Mahoning County Courthouse to testify on behalf of the State of Ohio in a criminal trial.

In the summer of 2002, before being held at LCI, Farah was incarcerated in the Mahoning County Justice Center ("MCJC"). While imprisoned at MCJC, Farah allegedly overheard Jacob DiCarlo and Michael Kapsouris, both inmates, discussing their participation in a bank robbery and stabbing. Farah and another inmate, David McKee, subsequently agreed to testify as to DiCarlo and Kapsouris's admissions during their November 2002 Mahoning County criminal trial.

Because both Farah and McKee were incarcerated at LCI at the time of trial, Judge Robert Lisotto of the Mahoning Court of Common Pleas issued judgment entries and warrants on November 5, 2002 instructing that the two men be transported from LCI to MCJC, where they would be held until they completed their testimony. Judge Lisotto's order as to Farah instructed, "We command you take Daniel Farah . . . now confined in Lorain Correction Institute . . . and him safely keep in the Mahoning County Justice Center so that you have him before our Common Pleas Courtroom #2 at the Courthouse in said County, on Friday, November 8, 2002 for further court proceedings in the within case." (Defs. Supp. App., Doc. 18, Ex. 3.) Additionally, Judge Lisotto's bailiff sent a November 5, 2002 handwritten memorandum to Sergeant Montero of the Mahoning County Sheriff's office, stating, "Daniel Farah and David McKee are both incarcerated in Lorain

Correctional: they are *both state witnesses* in Ohio vs. Kapsouris & DiCarlo . . . *If possible*, do not keep inmates together when transporting or when held in jail. Any questions, please call." (emphasis supplied). (*Id*. at Ex. 3).

On November 7, 2002, officials transported both Farah and McKee from LCI to MCJC in two separate vehicles. Upon their arrival at MCJC, Farah and McKee were booked according to standard procedure, and, as directed by the bailiff's handwritten memorandum, the men were housed separately from DiCarlo, Kapsouris, and each other.

On the morning of November 8, 2002, when Farah and McKee were scheduled to testify, Defendant Deputy Sheriff Frederick White was working the "float" position at MCJC. Accordingly, White was responsible for gathering inmates from the six floors of MCJC to transport them by elevator to the booking area, where they would be handcuffed or shackled before being transported to the courthouse. Typically, when a court enters a separation order for inmates due to a risk of violence, such an order will be noted on the court "movement sheet," to which the float deputy sheriff refers in gathering the inmates. In this case, however, it is undisputed that the movement sheet used by White did not indicate that Farah was a state witness or that he was to be separated from DiCarlo and Kapsouris. Moreover, although Farah asserts that he told White that he was to be kept separate from DiCarlo, there was no court-mandated separation order attached to or noted on the movement sheet for that date.

White subsequently gathered all of the inmates listed on his movement sheet, including DiCarlo, and proceeded by elevator to the booking area on the ground floor. As the prisoners exited the elevator on the ground floor, DiCarlo assaulted Farah from behind by striking him twice in the face.

Although Farah contends that White took no action to prevent the attack or to restrain DiCarlo,

White claims that he "immediately subdued DiCarlo" and ensured that Farah was given the necessary

medical attention for the injuries he suffered to his head, face, and mouth. Farah maintains that due

to DiCarlo's assault, he required approximately 100 stitches in his mouth and can no longer taste or

smell.

## B. Procedural Background

Seeking monetary relief, on November 23, 2003, Farah filed a complaint in the Court of

Common Pleas for Mahoning County asserting Eighth Amendment claims of deliberate indifference

to his health and safety under 42 U.S.C. § 1983 against Defendants as well as a personal injury claim

against DiCarlo under state law. Defendants removed the case to federal court, and on June 17,

2005, after Farah failed to file a response to Defendants' motion for summary judgment, the district

court dismissed all of Farah's claims without prejudice for failure to prosecute. At the time of the

2005 dismissal, Farah's third set of attorneys had withdrawn from the case, and Farah had not yet

secured alternate counsel.

Farah subsequently hired a fourth attorney, and on June 16, 2006, he re-filed his complaint.

Defendants answered and filed a motion for summary judgment. Farah filed a "motion to dismiss"

the summary judgment motion as premature, or, in the alternative, to obtain an extension of time to

conduct discovery and file a memorandum in opposition. Noting that the individual defendants had

asserted the defense of qualified immunity, which must be resolved at the earliest possible stage in

litigation, the district court denied Farah's motion. Granting in part and denying in part Farah's

motion for an extension of time to conduct discovery and file a memorandum in opposition to

Defendants' motion for summary judgment, the court stayed all discovery except for that limited to the issue of qualified immunity and granted Farah an extension of time to file such a memorandum. Farah, however, never conducted discovery on the qualified immunity issue.

When the parties had fully briefed the Defendants' motion for summary judgment, the court granted the motion with regard to Farah's section 1983 claims and dismissed without prejudice Farah's personal injury claim against DiCarlo. On April 4, 2007, Farah's attorney filed a timely notice of appeal as well as a supplemental notice of appeal. This Court dismissed Plaintiff's case for want of prosecution on June 14, 2007, at which point Farah filed an application seeking to proceed *in forma pauperis*, pursuant to 28 U.S.C. § 1915. On July 2, 2007, we granted Farah's motion to reinstate his appeal, finding that he had cured the default that led us to dismiss the appeal. We consolidated the two appeals for briefing and submission and granted Farah's counsel's motion to withdraw.

## II. ANALYSIS

### A. Standard of Review

We review a district court's grant of summary judgment de novo. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 700 (6th Cir. 2007). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A district court's election to deny discovery to the nonmoving party before granting summary judgment, however, is reviewed for abuse of discretion. *Ross v. Duggan*, 402 F.3d 575, 581 (6th Cir.

2004) (citing *United States v. Miami Univ.*, 294 F.3d 797, 815 (6th Cir. 2002)). "An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made." *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994). A district court abuses its discretion by either relying on clearly erroneous findings of fact, improperly applying the law, or employing an erroneous legal standard. *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 736 (6th Cir. 2008).

Accordingly, in the instant case, should we find that the district court's denial of Farah's request for additional discovery was not an abuse of discretion, viewing the evidence in the light most favorable to Farah, our task is to ascertain "whether the evidence presents a sufficient disagreement as to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the burden to show the absence of any genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). Once the moving party satisfies its burden, the opposing party must then go beyond its pleadings and "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

**B. Merits**

**1. *The Partial Denial of Farah's Motion for an Extension of Time to Conduct Discovery***

Farah's primary contention on appeal is that the district court erred in ruling on Defendants' motion for summary judgment before providing him with an opportunity to conduct additional discovery. Our disposition of Farah's argument is governed by the summary judgment standard set forth in Federal Rule of Civil Procedure 56. Under Rule 56(b), "[a] party against whom relief is sought may move *at any time*, with or without supporting affidavits, for summary judgment on all

or part of the claim." Fed. R. Civ. P. 56(b) (emphasis added). Rule 56(f), however, entitles the court to deny a motion for summary judgment or order a continuance to enable further discovery when "a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f).

In *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004), this Court affirmed the "well-established" principle that the plaintiff must receive "a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment." (internal quotations omitted). The *Ball* court noted, however, that "the district court's decision to deny further discovery is . . . generally unreviewable unless the appellant has filed a Rule 56(f) affidavit or motion that gives the court a chance to rule on the need for additional discovery." *Id.* at 720 (internal quotations omitted). Even when a party files a Rule 56(f) request, "it is not an abuse of discretion for the district court to deny the discovery request when the party makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of [the document] to be discovered." *Id.* (internal quotations omitted). Likewise, a district court acts well within its discretion in denying a Rule 56(f) affidavit or motion when the document "lacks any details or specificity." *Id.* (internal quotations omitted).

Farah's "motion to dismiss" or, in the alternative, request for an extension of time to conduct discovery and file a memorandum constitutes a request for relief under Rule 56(f). The district court's partial denial of Farah's request confirms that the district court acted well within its discretion. Plaintiff states, in support of his request, as follows:

7

> Because of the time sensitive nature of the re-filing, counsel for Plaintiff has only be[en] able to review a limited amount of information relating to this case. There are deposition transcripts that counsel has not yet been able to review, depositions that still need to be taken in this case, as well as other discoverable material that counsel needs to review before any response can be made to Defendants' motion. Additionally, since this is considered a new case, there needs to be a scheduling order issued and discovery conducted . . . . To require Plaintiff's current counsel to respond within the time required under the Civil Rules without following the pretrial requirements and scheduling timelines for discovery would be unconscionable unreasonable and contrary to the civil and court rules and contrary to the interest of justice.

(Joint Appendix, Doc. 3 at 1-2.) This language can be characterized only as "general," "conclusory," and "lack[ing] any details or specificity." *See Ball*, 385 F.3d at 720. The motion fails to enumerate both the additional information Farah requires to oppose summary judgment and the ways in which such information would relate to Farah's claims. Moreover, though the district court, rather than denying Farah's motion in full, allowed him additional time to gather information related to Defendants' defense of qualified immunity, it is undisputed that Farah failed to undertake such discovery.

Our conclusion that the district court did not abuse its discretion is further supported by the time-sensitive nature of Defendants' qualified immunity defense. It is a well-established "policy of this circuit . . . to resolve immunity questions at the earliest possible stage of litigation . . . ." *Dean v. Byerley*, 354 F.3d 540, 557 (6th Cir. 2004). Because qualified immunity is a threshold issue, the district court did not abuse its discretion in limiting the scope of Farah's Rule 56(f) request for additional discovery to information related to the defense.

   2.      *The District Court's Grant of Summary Judgment*

Farah also challenges the district court's ruling on the merits. Although the majority of Farah's

*No. 07-3476* and *07-3477*
*Farah v. Wellington, et al.*

eleven-page pro se appellate brief focuses on his alleged need for additional discovery, Farah makes

one direct reference to the district court's grant of summary judgment, requesting that we "take

judicial notice . . . that . . . summary judgment was absolutely premature and may violate [his] civil

rights." (Pl. App. Br. at 5.) Further, despite his brief's ambiguous language, Farah appears to refer

to the lower court's ruling, stating in his "Conclusion":

> In the case at bar, the Plaintiff, Daniel Farah suffered a brutal beating at the hands of Jacob
> DiCarlo, a beating which [sic] not have occurred but for the deliberate indifference and
> recklessness of Defendants Frederick White, and Mahoning County failed to practice's [sic]
> their procedures who sat idly by and allowed the beating to take place despite being well
> aware of the imminent danger Farah was in on that elevator, (which) caused major injuries
> to this plaintiff, by Mahoning County playing a significant role, again causing serious
> injuries.

(*Id.* at 9.)

Although Farah is a pro se litigant, and we have a corresponding duty to accord him "the benefit

of a liberal construction of [his] pleadings and filings," *Boswell v. Mayer*, 169 F.3d 384, 387 (6th

Cir. 1999), "pro se plaintiffs are not automatically entitled to take every case to trial . . . [and] the

lenient treatment generally accorded to pro se litigants has limits." *Pilgrim v. Littlefield*, 92 F.3d

413, 416 (6th Cir. 1996) (citations omitted) (upholding district court's dismissal of plaintiff's

complaint where pro se plaintiffs were aware of potential deficiencies in their complaint before

dismissal and failed to take advantage of the opportunity to remedy those deficiencies). We

conclude that Farah's complete inattention to the merits of Defendants' summary judgment motion

represents one such limit.

When a party addresses issues in a perfunctory manner, unaccompanied by any effort at

developed argumentation, we deem those arguments to be waived. *Langley v. DaimlerChrysler*

*Corp.*, 502 F.3d 475, 483 (6th Cir. 2007) (finding that employee waived her challenge to the grant of summary judgment to defendants where counsel "has not addressed the controlling issues" and failed to "discuss or cite to the district court's analysis in any detail"). By failing to provide the Court with any developed argument regarding the merits of the district court's grant of summary judgment in favor of Defendants, Farah abandoned his appeal of that summary judgment.

Even reviewing Farah's claims with the liberal construction required for pro se plaintiffs, however, he has failed to present evidence showing a genuine issue for trial. As explained in the district court's opinion, Farah has not established a genuine issue of material fact regarding Defendants' qualified immunity defense because he has not shown that he suffered a constitutional violation. *See Farah v. Wellington*, 4:06 CV 1481, 2007 WL 756687, at *5 (N.D. Ohio Mar. 8, 2007). Farah asserts that the Defendants' failure to recognize the danger he faced in being transported alongside DiCarlo violated his Eighth Amendment rights. In order to hold a prison official liable for an Eighth Amendment violation, a plaintiff must demonstrate that the official acted with "deliberate indifference" to the inmate's safety. *See Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Deliberate indifference is comprised of both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 835-57 (1994). The objective component requires that the deprivation alleged be "sufficiently serious," while the subjective component requires a plaintiff to establish that the government officials had a "sufficiently culpable state of mind." *Id*. at 834.

Though DiCarlo's assault of Farah satisfies the objective component of the inquiry, viewing the facts in the light most favorable to Farah, White did not possess the requisite subjective knowledge

10

that Farah faced a substantial risk to his safety due to DiCarlo's presence on the elevator. Because there is no dispute that White's movement sheet had no written instructions that he should keep Farah separate from DiCarlo, White could not have been expected to take additional measures to protect Farah, and no constitutional violation occurred. Therefore, the lower court correctly granted White qualified immunity on Farah's claim. By extension, Farah's failure to present facts establishing a constitutional violation also makes appropriate the lower court's dismissal of Farah's claim as to Defendants Wellington, Budd, and Mahoning County.

In short, Farah has not set forth any evidence suggesting that Defendants' failure to act to protect him from DiCarlo's assault rises to the level of "deliberate indifference" required to establish a valid claim for relief pursuant to 42 U.S.C. § 1983. No genuine issue of material fact exists for trial, and the district court's grant of summary judgment in favor of Defendants was appropriate.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to the Defendants.