*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

GERALD WILLIAM CARDINAL,

        *Plaintiff-Appellant,*

    *v.*

LINDA METRISH,

        *Defendant-Appellee.*

No. 08-1562

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 06-00232—Gordon J. Quist, District Judge.

Submitted: December 2, 2008

Decided and Filed: April 24, 2009

Before: BOGGS, Chief Judge; CLAY, Circuit Judge; BERTELSMAN, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Gerald William Cardinal, Detroit, Michigan, pro se.

    BERTELSMAN, D. J., delivered the opinion of the court, in which BOGGS, C. J., joined. CLAY, J. (pp. 12-14), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

    BERTELSMAN, District Judge. Plaintiff Gerald William Cardinal appeals the district court's grant of summary judgment in favor of the defendant Linda Metrish, the warden where he was incarcerated. The district court dismissed plaintiff's claims

---

    [*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

alleging an Eighth Amendment violation under 42 U.S.C. § 1983, as well as violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.* We AFFIRM.

## BACKGROUND

The plaintiff was an inmate confined at the Hiawatha Correctional Facility and a participant in the kosher meal program. On March 2, 2005, the plaintiff received several misconduct charges and was placed in temporary segregation. Because the Hiawatha facility could only house inmates in temporary segregation for eight hours, the plaintiff was transferred to the Kinross Correctional Facility. Kinross, however, does not serve kosher meals.

While at the Kinross facility, the plaintiff refused the non-kosher meals. On Saturday, March 5, 2005, after the plaintiff refused to eat for 72 hours, the staff contacted Health Services, as required by Michigan Department of Corrections policy. On Monday, March 7, 2005, Defendant Metrish, the warden of both facilities, learned that the plaintiff was refusing non-kosher meals. On March 8, 2005, the defendant transferred the plaintiff to Chippewa Correctional Facility, which provides both kosher meals and temporary segregation.

The plaintiff filed a pro se complaint in the United States District Court for the Western District of Michigan asserting a § 1983 claim against the defendant, in her individual capacity, for a violation of his Eighth Amendment rights, and asserting a violation of RLUIPA against the defendant in her official capacity. The plaintiff sought damages in excess of $10,000 on each claim for the defendant's failure to provide him with kosher food, which resulted in his not eating for eight days.[1] The defendant filed a motion for summary judgment. The district court adopted the report and

---

[1]In his amended complaint, the plaintiff alleges that he was denied kosher food for six days at the Kinross facility and that it took another two days to get kosher meals at the new facility. (District Court Docket Entry 20, ¶ 16).

recommendation of the United States Magistrate Judge and granted summary judgment to the defendant. The plaintiff appeals.**2**

## ANALYSIS

### The District Court did not Abuse its Discretion in Denying Discovery.

We review for an abuse of discretion a district court's decision to enter summary judgment without permitting discovery. *Short v. Oaks Corr. Facility*, 129 F. App'x 278, 280 (6th Cir. 2005). Rule 56(f) of the Federal Rules of Civil Procedure provides the "mechanism for a plaintiff and the courts to give effect to the well-established principle that 'the plaintiff must receive "a full opportunity to conduct discovery" to be able to successfully defeat a motion for summary judgment.'" *Id.* at 281 (quoting *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004)). Rule 56(f) provides that the plaintiff is required to file an affidavit or motion explaining what material facts he hopes to uncover by the requested discovery. *Id.* If the plaintiff makes only general and conclusory statements in his affidavit regarding the needed discovery, lacks any details or specificity, it is not an abuse of discretion for the district court to deny the request. *Id.*

Here, the plaintiff argues that the district court erred in not permitting him to obtain the requested discovery, i.e., production of entries in the Kinross segregation log book from March 2, 2005 through March 8, 2005. The defendant introduced portions of the log book as exhibits in support of her motion for summary judgment. Upon receipt of these materials, the plaintiff filed a Rule 56(f) affidavit with his response to the motion for summary judgment, explaining that he did not know that a log book existed and requesting that the district court order the disclosure of the missing pages. The plaintiff's Rule 56(f) affidavit explained that through the additional discovery he hoped to discover:

> (1) that a staff member logged in an earlier date, reporting to Defendant Metrish that Plaintiff was going without food, (2) to see if Defendant, or

---

**2**The defendant did not file an appellate brief in this matter.

someone in her office, contacted segregation staff about Plaintiff, (3) to see if staff logged in how many meals plaintiff didn't have, and (4) to see if segregation staff logged in when they were informed about Plaintiff's kosher food needs.

(District Court Docket Entry 28, ex. 2).

The issue of whether the defendant was notified that the plaintiff was going without food prior to March 7, 2005 goes to the heart of the defendant's defense. Even if there were additional entries in the segregation staff's log book regarding plaintiff's refusal to eat, these entries would not establish that the defendant had been informed of plaintiff's situation. Accordingly, we hold that the district court's order denying the plaintiff's request for additional discovery was not an abuse of discretion.

### The Defendant is Entitled to Eleventh Amendment Immunity on the RLUIPA Claim.

Plaintiff seeks monetary damages, as well as declaratory and injunctive relief, asserting that the defendant violated RLUIPA by not providing him with kosher meals while he was incarcerated at the Kinross facility. RLUIPA provides:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. §§ 2000cc-1(a). RLUIPA defines "government" as including States and their agencies and departments, as well as persons acting under color of State law. 42 U.S.C. § 2000cc-5(4)(A). Plaintiff's RLUIPA claim against the defendant, a State official, in her official capacity is considered a claim against the State of Michigan. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Accordingly, any immunity available to the State is available to the defendant in her official capacity. *Id*.

The plaintiff seeks declaratory and injunctive relief against the defendant for the alleged RLUIPA violation. The plaintiff, however, has been transferred from the Kinross facility to a facility that offers kosher meals. In addition, the Hiawatha facility

has since changed its policy to preclude transferring participants in the kosher meal program to the Kinross facility. Therefore, we find that the plaintiff's request for declaratory and injunctive relief is rendered moot. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding prisoner's claim for injunctive and declaratory relief mooted by his transfer to new facility).

The district court found that the plaintiff's claim for monetary damages against the defendant in her official capacity should be dismissed because the State of Michigan has not waived its Eleventh Amendment immunity to claims for damages under RLUIPA. The plaintiff argues that, by accepting federal funds for its prisons, the State waived its immunity for RLUIPA claims.

By accepting federal prison funds, States consent to provide "appropriate relief" to prisoners who suffer a RLUIPA violation. 42 U.S.C. §§ 2000cc-2(a), 2000cc-1(b)(1) (requiring all states that receive federal prison funds to comply with RLUIPA). RLUIPA provides that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). The issue before us is whether monetary damages are "appropriate relief" for violations of RLUIPA.

Neither the United States Supreme Court nor this court has ruled on the issue. There is also no consensus among the other Circuits as to whether a State's acceptance of federal prison funds constitutes a waiver of its sovereign immunity as to RLUIPA claims for damages. The Courts of Appeals for the Third, Fourth and Fifth Circuits, along with a district court from this Circuit, have concluded that the States are immune from claims for monetary damages under RLUIPA. *See Sossamon v. Lone Star State of Texas,* No. 07-50632, 2009 WL 382260, at *7-8 (5th Cir. Feb. 17, 2009) (designated for publication); *Scott v. Beard*, 252 F. App'x 491, 492-93 (3d Cir. 2007)*; Madison v. Virginia,* 474 F.3d 118, 122-23 (4th Cir. 2006); *Porter v. Caruso*, No. 1:05-cv-562, 2008 WL 3978972, at *3-7 (W.D. Mich. Aug. 22, 2008), *appeal docketed*, No. 08-2314 (6th Cir. Oct. 14, 2008). *See also Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006) (holding language in Religious Freedom Restoration Act, similar to that

in RLUIPA, permitting suit for "appropriate relief," did not waive federal government's immunity to suits for damages).  The Court of Appeals for the Eleventh Circuit, however, takes the opposite view and ruled that a State's receipt of federal prison funds constitutes a waiver of its sovereign immunity for suits seeking monetary damages under RLUIPA.  *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007).

In *Madison v. Virginia,* the plaintiff sued the Commonwealth of Virginia, alleging it violated RLUIPA by denying him kosher meals.  *Madison*, 474 F.3d at 122-23.  The district court held that by accepting federal prison funds, the Commonwealth of Virginia had waived its sovereign immunity for RLUIPA claims, including those for monetary damages.  *Id.* at 123.  The Court of Appeals for the Fourth Circuit disagreed, stating that, although Virginia consented, by accepting federal prison funds, to be subject to the substantive requirements of RLUIPA, the language of RLUIPA did not expressly and unequivocally extend its waiver of sovereign immunity to suits seeking monetary damages.  *Id.* at 129-33.  The court explained:

> State sovereign immunity is among the Constitution's most foundational principles, *see, e.g., Brown v. N.C. Div. of Motor Vehicles,* 166 F.3d 698, 704 (4th Cir. 1999), and we may not "infer that a State's immunity from suit in the federal courts has been negated," *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).  "[T]here can be no consent by implication or by use of ambiguous language." *Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S. Ct. 2957, 92 L. Ed. 2d 250 (1986) (quoting *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 659, 67 S. Ct. 601, 91 L. Ed. 577 (1947)).  A waiver must be "unequivocally expressed in statutory text." *See Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996).  For this reason, general participation in a federal program or the receipt of federal funds is insufficient to waive sovereign immunity. *See Atascadero [State Hosp.v. Scanlon],* 473 U.S. [234,] 246-47, 105 S. Ct. 3142 [(1985)].  Rather, "Congress must make its intention unmistakably clear in the language of the statute." *Hoffman v. Conn. Dep't of Income Maintenance,* 492 U.S. 96, 101, 109 S. Ct. 2818, 106 L. Ed. 2d 76 (1989) (plurality) (internal quotation omitted).

*Id.* at 129-30.

The Fourth Circuit concluded that "a waiver of sovereign immunity for some type of remedy does not necessarily extend to suits for damages." *Id*. at 131 (quoting *Webman,* 441 F.3d at 1025). For a waiver of sovereign immunity to extend to claims for monetary damages, the waiver must "unambiguously" extend to such claims. *Id.* (quoting *Lane v. Pena,* 518 U.S. 187, 192 (1996)). Any purported waiver of sovereign immunity will be "strictly construed, in terms of its scope, in favor of the sovereign." *Lane,* 518 U.S. at 192. *See also Gomez-Perez v. Potter*, 128 S. Ct. 1931 (2008) (considering waiver of federal government's sovereign immunity).

Thus, the Fourth Circuit held that RLUIPA's "appropriate relief" language did not unequivocally waive the State's immunity from suit for monetary damages. RLUIPA "makes no reference to monetary relief - or even to sovereign immunity generally." *Madison*, 474 F.3d at 131. Thus, the court concluded that acceptance of federal prison funds under RLUIPA does not waive a State's immunity from suits for monetary damages. *Id*.

Similarly, the Fifth Circuit, finding the Fourth's Circuit's reasoning in *Madison* persuasive, recently held that the "appropriate relief" language contained in RLUIPA was "not sufficiently clear in light of the [Supreme] Court's sovereign-immunity jurisprudence." *Sossamon*, 2009 WL 382260 at *7. Accordingly, the court held that any claim under RLUIPA for monetary damages against the defendants in their official capacity was barred by the State's sovereign immunity. *Id*. at *8.

The plaintiff argues that the Sixth Circuit should adopt the reasoning of the Eleventh Circuit found in *Smith v. Allen*. In *Smith,* the court held that RLUIPA created a private cause of action for "appropriate relief" against a State that accepted federal prison funds. *Smith,* 502 F.3d at 1269. The Eleventh Circuit, relying on *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60 (1992), stated that "where Congress ha[s] not given any guidance or clear indication of its purpose with respect to remedies, federal courts should presume the availability of all appropriate remedies." *Smith,* 502 F.3d at 1270. Thus, the *Smith* court concluded that the phrase "appropriate relief" as used in

RLUIPA "is broad enough to encompass the right to monetary damages." *Smith,* 502 F.3d at 1270.

We disagree with the Eleventh Circuit's holding that *Franklin* is applicable to a claim against a State for money damages under RLUIPA. *Franklin* did not involve a claim of sovereign immunity. The Supreme Court has recognized that *Franklin* is not per se applicable to all claims against a State, but only to claims in which a State has expressly waived its sovereign immunity. *Lane*, 518 U.S. at 196-97 (finding Congress did not waive federal government's sovereign immunity for monetary damages for claims against it for violations of § 504(a) of Rehabilitation Act of 1973). In *Lane*, the Supreme Court explained:

> Petitioner's reliance on *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S. Ct. 1028, 117 L. Ed. 2d 208 (1992), . . . is misplaced. In *Franklin*, we held only that the implied private right of action under Title IX of the Education Amendments of 1972 supports a claim for monetary damages. "[A]bsent clear direction to the contrary by Congress," we stated, "the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Id*., at 70-71, 112 S. Ct., at 1035. *Franklin*, however, involved an action against nonfederal defendants under Title IX. Although the Government does not contest the propriety of the injunctive relief Lane obtained, the Federal Government's sovereign immunity prohibits wholesale application of *Franklin* to actions against the Government to enforce § 504(a). As the Government puts it, "[w]here a cause of action is authorized against the federal government, the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived."

*Id.*

As discussed above, a finding that a State has waived its sovereign immunity by accepting federal funds must be based on unequivocal language in the statute that makes the waiver unambiguous. Here, RLUIPA does not contain a clear indication that Congress unambiguously conditioned receipt of federal prison funds on a State's consent to suit for monetary damages.

We find the reasoning of the Fourth and Fifth Circuits consistent with the current Supreme Court case law requiring waivers of sovereign immunity to be "unequivocally expressed." *See, e.g.*, *Gomez-Perez*, 128 S. Ct. at 1942-43; *Lane*, 518 U.S. at 192; *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34, 37 (1992). We hold that, because RLUIPA's "appropriate relief" language does not clearly and unequivocally indicate that the waiver extends to monetary damages, the Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA.

### Defendant was Entitled to Summary Judgment on the § 1983 Claim Alleging an Eighth Amendment Violation.

The plaintiff asserted a § 1983 claim against the defendant in her individual capacity for violations of his Eighth Amendment right to be free from cruel and unusual punishment for not providing him with kosher food, which resulted in his not eating for eight days. The Sixth Circuit has held that the deliberate and unnecessary withholding of food that is essential to normal health can constitute the deliberate indifference to medical needs that violates the Eighth Amendment. *See Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977).

To establish an Eighth Amendment violation, the plaintiff must show that the defendant acted with deliberate indifference to his basic needs. The Sixth Circuit recently explained:

> In order to hold a prison official liable for an Eighth Amendment violation, a plaintiff must demonstrate that the official acted with "deliberate indifference" to the inmate's safety. *See Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). Deliberate indifference is comprised of both an objective and a subjective component. *Farmer v. Brennan,* 511 U.S. 825, 835-57, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The objective component requires that the deprivation alleged be "sufficiently serious," while the subjective component requires a plaintiff to establish that the government officials had a "sufficiently culpable state of mind." *Id.* at 834, 114 S. Ct. 1970.

*Farah v. Wellington*, 295 F. App'x 743, 749 (6th Cir. 2008). *See also Harrison v. Ash*, 539 F.3d 510, 517-18 (6th Cir. 2008). To establish the subjective component, the

plaintiff must establish that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

The case at bar is not a case in which the plaintiff was deliberately denied food. Instead, based upon an apparent administrative error, the plaintiff had been transferred to a facility that did not offer a kosher diet. The plaintiff does not allege that he was denied food, but that he was denied kosher food. The evidence establishes that the defendant was first made aware of the plaintiff's situation on Monday, March 7, 2005. In response, she transferred the plaintiff to a facility that provided kosher meals.

The district court correctly held that the plaintiff had not pointed to any evidence that the defendant knew and disregarded an excessive risk to his health or safety. Instead, the evidence established that as soon as the defendant was made aware of the plaintiff's situation, she instituted a transfer to a facility that could accommodate plaintiff's kosher needs and security level. Thus, the plaintiff did not demonstrate that the defendant failed to act after being made aware of the facts. We hold that the district court correctly granted summary judgment to the defendant on plaintiff's § 1983 claim alleging a violation of his Eighth Amendment rights.

**Plaintiff has not Established a First Amendment Violation.**

The plaintiff argues that, even though he did not specifically allege such a violation in his complaint, the district court was required, by his pro se status, to consider a § 1983 claim for the violation of his First Amendment rights since the facts alleged were sufficient to assert such a claim. In its April 24, 2008 Order, the district court considered this argument in ruling on plaintiff's motion to amend the court's order entering summary judgment. (District Court Docket Entry 39). The district court found that, even if the plaintiff had asserted a § 1983 claim for a First Amendment violation,

the defendant would have been entitled to summary judgment because the defendant was not actively involved in denying the plaintiff kosher meals.

We have held that, even if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). *See also Copeland v. Machulis,* 57 F.3d 476, 481 (6th Cir. 1995). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Combs*, 315 F.3d at 558 (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).

Here, the evidence established that upon learning of the plaintiff's situation, the defendant began procedures to transfer the defendant to a facility that could accommodate his needs. Since the plaintiff does not allege that the defendant was actively involved in the denial of kosher food, we find that the district court's analysis of the issue was correct.

For the reasons discussed above, the judgment of the district court is **AFFIRMED**.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

CLAY, Circuit Judge, concurring in part and dissenting in part. I concur in the majority's holding that the district court did not abuse its discretion in denying further discovery and that Defendant was entitled to summary judgment on Cardinal's § 1983 claims. I also agree that Cardinal's claims for declaratory or injunctive relief are moot because Cardinal has been transferred to a different facility which provides kosher meals, and because the Michigan Department of Corrections has changed its policy to preclude transferring participants in the kosher meal program to facilities that have no such program. I write separately, however, because I do not believe that this is a case in which this Court should decide whether the doctrine of sovereign immunity bars a plaintiff from recovering monetary damages under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*.

As the majority indicates, RLUIPA states that "[a] person may assert a violation of this Act as a claim or defense in a judicial proceeding and obtain appropriate relief against a government[,]" 42 U.S.C. § 2000cc, but courts are split on the issue of whether "appropriate relief" encompasses monetary relief. *Compare Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007) (holding that the phrase "appropriate relief" in RLUIPA encompasses monetary as well as injunctive relief), *and Price v. Caruso*, 451 F. Supp. 2d 889, 895 (E.D. Mich. 2006) (holding that a plaintiff "may have a cognizable claim for monetary damages . . . under RLUIPA"), *with Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006) (concluding that RLUIPA's "appropriate relief against a government" language "falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages"). Prior to today's decision, this Court, like the Supreme Court, had not expressed an opinion on the matter.

This is not a suitable case for resolving the issue of what constitutes "appropriate relief" under the statute, or more specifically, whether "appropriate relief" should be held to encompass money damages. This is because the factual record is woefully

underdeveloped and the briefing of the legal issues is completely inadequate–undoubtedly due in large measure to the fact that Plaintiff is proceeding *pro se* without the benefit of legal representation, and Defendant has failed in its professional responsibilities to this Court by declining to file the requisite brief on appeal. Inexcusably, the defense's only filing before this Court was a one-page letter brief stating that Defendant would rely upon the district court's decision and the briefs filed before the district court. Cardinal, proceeding *pro se*, attempted to address the sovereign immunity issue in his appellate brief, but his arguments are less than a picture of clarity and Plaintiff acknowledges that he "is substantially limited in law and he has had problems with law library access." (Cardinal's Br. at 1.) The case was submitted on the briefs without oral argument, and this Court was left with little, if any, developed argument as to the propriety of applying the doctrine of sovereign immunity to RLUIPA claims.

Perhaps more importantly, it is not clear to me that Cardinal has raised a cognizable claim under RLUIPA, which states that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . ." 42 U.S.C. § 2000 cc-1(a). Beyond asserting that he required and was denied a kosher diet, Cardinal does not describe with any particularity his religious dietary needs, the actual food that was provided to him, and what injuries he actually suffered. The record is devoid of any explanation as to whether *some* of the food served to Plaintiff in the non-kosher prison environment, especially vegetables, might have been consumed by him without violating his kosher dietary restrictions. Nor is it al all clear whether Plaintiff, operating pursuant to the doctrine of "necessity," would have been permitted, in the interest of preserving his health and welfare, to consume non-kosher food products, where no kosher food was available, without violating his religious tenets. In other words, the record below is woefully underdeveloped. While we are to construe *pro se* petitions liberally in favor of the plaintiff, *see Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999), this record offers very little to support Cardinal's RLUIPA claim or to justify the need to resolve on behalf of the circuit the availability of money damages under the statute.

In view of the constraints presented by the instant case, I would be inclined to instruct the court below to dismiss Cardinal's RLUIPA claim without prejudice and to refrain from addressing whether the doctrine of sovereign immunity bars a plaintiff from recovering monetary relief under RLUIPA.  I therefore respectfully dissent with regard to that portion of the majority opinion.