NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0563n.06

**07-2081**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 12, 2009**
LEONARD GREEN, Clerk

PHILLIP BERRYMAN,              )
                              )
    Plaintiff-Appellant,        )
                              )
v.                            )    ON APPEAL FROM THE UNITED
                              )    STATES DISTRICT COURT FOR THE
JENNIFER GRANHOLM, Governor, et al.,   )    EASTERN DISTRICT OF MICHIGAN
                              )
    Defendants-Appellees.       )

Before: DAUGHTREY, GILMAN, and ROGERS, Circuit Judges.

**MARTHA CRAIG DAUGHTREY,** Circuit Judge. Petitioner Phillip Berryman appeals the district court's grant of summary judgment in favor of the defendants in this action brought under the Religious Land Use and Institutionalized Persons Act (RLUIPA or the Act), Pub. L. No. 106-274, 114 Stat. 803 (2000), 42 U.S.C. §§ 2000cc-1 through 2000cc-5, and under 42 U.S.C. § 1983 for violation of Berryman's rights under the First Amendment's Free Exercise Clause and the Eight Amendment's protection against cruel and unusual punishment. Berryman, an inmate in the custody of the Michigan Department of Corrections (MDOC), sued Governor Jennifer Granholm and officials of both MDOC and its St. Louis Correctional Facility in their individual and official capacities, seeking injunctive relief and monetary damages, based on his claim that his right to practice Judaism was

infringed when he was temporarily removed from the prison's Kosher Meal Program.[1]

Noting that this claim was the gravamen of the complaint, the district court analyzed only

the alleged RLUIPA violation and determined that because the plaintiff's suspension from

the program was temporary, it did not constitute a "substantial burden" on Berryman's

rights under the Act.

On appeal, Berryman claims that the district court erred in granting summary

judgment to the defendants, based principally upon his argument that the evidence

established the existence of a genuine issue of material fact sufficient to take his RLUIPA

and constitutional claims to trial. We disagree.

The district court's grant of summary judgment to the defendants on the RLUIPA

claim was proper because Berryman cannot receive either monetary damages or injunctive

relief under the Act. Furthermore, his constitutional claims must fail because they are

without merit. We therefore affirm the district court's judgment but for reasons different

from those relied upon by the district judge.

---

[1] The Michigan governor and several high-ranking MDOC officials were granted summary judgment early in the proceedings, based on the district court's determination that they played no part in the decision to remove Berryman from the prison's Kosher Meal Program. The record also shows that Berryman had a co-plaintiff originally named in the complaint, but this individual did not appeal and is no longer a party to this litigation.

## I. **FACTUAL AND PROCEDURAL BACKGROUND**

Berryman was a participant in the Kosher Meal Program at the St. Louis Correctional Facility, the Michigan prison in which he was incarcerated when the events giving rise to this litigation occurred. In May 2005, he received a "notice of intent to conduct an administrative hearing" from Darlene Lance, the prison facility's manager. This hearing was ordered to determine whether Berryman had violated Policy Directive 05.03.150, paragraph WW, which states that "[a] prisoner approved to eat from a religious menu shall have that approval rescinded if s/he eats, or has in his/her possession, any food item that violates a tenet of his/her designated religion." The notice form further enumerated specific non-kosher foods that Berryman had purchased from the prison store, including macaroni and cheese, Squeeze Pizza Sauce, chili, chicken noodle soup, Digby's All Stars candy, Fire Balls candy, and Chick-o-Sticks.

In the initial administrative hearing, Berryman contended that the policy did not forbid him from merely ordering non-kosher food items. In support of this contention, he submitted an affidavit from another prisoner named Truitte, in which Truitte averred that he had wheeled Berryman, in his wheelchair, to the store, where Berryman signed for the food that he had ordered. The affidavit stated further that Truitte had then wheeled Berryman back to his cell, where Berryman gave Truitte the non-kosher food items. Hearing Officer J. Kelly concluded that because no evidence established that Berryman

actually ate or personally possessed non-kosher food, he did not violate the express language of the prison rule simply by ordering food that he turned over to another inmate.

Following this initial hearing, prison officials requested an additional hearing, claiming that the first hearing was not supported by MDOC policy. At the second hearing, Hearing Officer B. Peet determined that the prior hearing had interpreted prison policy in error because Berryman not only ordered and possessed the non-kosher food but also violated prison rules that prohibited him from giving any personal property to another inmate. As a result, the hearing officer rescinded Berryman's approval for participation in the Kosher Meal Program but indicated that Berryman would be permitted to reapply for the program 60 days after his suspension if the order of removal was his first, or after one year if his was a second or subsequent removal. However, Berryman did not reapply for kosher meals at the end of his rescission period. In the district court, he offered as an excuse for his failure to seek readmission to the Kosher Meal Program the fact that "[he] never should have been taken off in the first place" and that a request for admission "would validate the removal." That, he argued would be "a lie," because it would require him to admit to violation of a tenet of Judaism.

Berryman subsequently invoked the prison's grievance procedures, which he succeeded in exhausting before filing his suit in federal court. The defendants submitted a response to Berryman's district court complaint and moved for summary judgment on multiple grounds. The district judge granted the defendants' motion, holding that

Berryman's suspension from the Kosher Meal Program did not substantially burden his religious exercise and, moreover, that the suspension furthered a compelling governmental interest by the least restrictive means. Additionally, the district court concluded that plaintiff's request for injunctive relief was rendered moot by his transfer to another prison and that defendants were entitled to qualified immunity on damages because the claimed right was not clearly established. Berryman then timely appealed the decision of the district court.

## II. <u>DISCUSSION</u>

### A. *Standard of Review*

"This Court reviews a district court's grant of summary judgment de novo." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008). Summary judgment is proper in instances where the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "In deciding an appeal of a grant of summary judgment, we view the evidence and draw all reasonable inferences in favor of . . . the non-moving party." *Mickey*, 516 F.3d at 521 (citing *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004)). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

B. **The RLUIPA Claim**

The Religious Land Use and Institutionalized Persons Act prohibits a state from imposing substantial and unjustified burdens on the religious liberty of state prisoners. It provides in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. The Act applies to any penal institution that receives federal financial assistance. *See id.* It defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Additionally, it provides that "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).

In this case, Berryman sought declaratory relief, injunctive relief, and monetary damages. As to the request for declarative and injunctive relief, the district court correctly held that because Berryman had been transferred from the St. Louis facility, the claim had become moot. *See Cardinal v. Metrish*, 564 F.3d 794, 798-99 (6th Cir. 2009) (citing *Kensu*

- 6 -

*v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)) (prisoner's claim for injunctive and declaratory relief mooted by his transfer to new facility). Moreover, we have recently held that "because RLUIPA's 'appropriate relief' language does not clearly and unequivocally indicate that the waiver extends to monetary damages, the Eleventh Amendment bars plaintiff's claim for monetary relief" under the Act. *Cardinal*, 564 F.3d at 801. It follows that Berryman cannot sustain his RLUIPA claim and that it was properly dismissed by the district court.

## C. <u>The Constitutional Claims</u>

The district court interpreted Berryman's complaint as raising claims only under RLUIPA because the "legal claims" section of the complaint did not mention 42 U.S.C. § 1983. But Berryman cited § 1983 and raised various constitutional provisions elsewhere in his complaint, and he has pursued those claims on appeal. Among them are allegations that (1) he has been denied his First Amendment right to the free exercise of religion, (2) he was removed from the kosher meal program in retaliation for prior exercises of his First Amendment right to freedom of speech, (3) his removal from the program has exacerbated his cancer and that the defendants' deliberate indifference to this condition constitutes cruel and usual punishment in violation of the Eighth Amendment, and (4) Jewish prison guards are permitted to receive kosher food even if they eat non-kosher food, which constitutes a violation of Berryman's right to equal protection under the Fourteenth Amendment.

The magistrate judge addressed each of these claims and determined that, with the exception of the alleged violation of Berryman's right to free exercise of religion, none had merit. We conclude that none of the plaintiff's allegations can be sustained.

The retaliation claim fails because, as the magistrate judge pointed out, Berryman did not establish a causal connection between the incidents that he identified as the basis for retaliation – such things as his complaints to prison officials that prisoners at the St. Louis facility were forced to pay for postage or had been denied coffee at breakfast – and his removal from the kosher meal program. The Eighth Amendment claim fails simply for lack of evidence, *i.e.*, proof that the defendants knew about his cancer or that the non-kosher food, in fact, exacerbated his condition. The equal protection claim fails because, as the magistrate judge found, prison guards and prisoners are not similarly situated.

As for Berryman's contention that his First Amendment right to the free exercise of religion was violated by his removal from the kosher meal program, that claim must overcome the deferential standard set by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). In *Turner*, the Court held "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests," a deferential standard required because of the "inordinately difficult undertaking" of prison administration, a task "that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Id.* at 89, 85.

When evaluating the reasonableness of a challenged regulation, we consider the four factors outlined in *Turner*:

> "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." If not, the regulation is unconstitutional, and the other factors do not matter. Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "ready alternatives" available "that fully accommodate the prisoner's rights at de minimis cost to valid penological interests."

*Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999) (quoting *Turner*, 482 U.S. at 89-91) (internal citations removed).

We conclude that Berryman's removal from the Kosher meal program passes muster under the deferential *Turner* standard. Berryman himself conceded that he had ordered and signed for the non-kosher food and that he had held it in his lap. Even accepting Berryman's contention that he had ordered the food for a non-Jewish inmate and his argument that he was fulfilling, rather than violating, his religious beliefs, the defendants' determination that he had violated the prison rules was not unreasonable. Prison officials have a legitimate penological interest not only in controlling the cost of the kosher meal program and ensuring that only those with sincere beliefs participate in the program, but also in maintaining discipline within the prison. *See Russell v. Wilkinson*, 79 F. App'x 175, 177 (6th Cir. 2003) (concluding that, in light of a prisoner's "obvious actions in not observing

- 9 -

the kosher food requirements outside meals," the prison had a legitimate penological interest in removing the prisoner from the program because of the need to maintain discipline in the facility).

On balance, the other *Turner* factors also weigh in favor of the defendants. Berryman may not have had any alternative way of maintaining a kosher diet apart from participation in the kosher meal program, but the impact on the allocation of prison resources (because of the expense required to maintain the Kosher meal program) would be weighty if prisoners participating in the program were able to order and eat whatever food they wanted without suffering any consequences. The magistrate judge noted that "modification of the regulation [prohibiting Kosher meal program participants from ordering nonkosher foods] is a ready alternative that would allow the prisoner to continue eating kosher meals." But that observation fails to account for the fact that a court should require such "ready alternatives" only when they come at a "de minimis cost to valid penological interests." *Turner*, 482 U.S. at 91 ("[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard."). There was no such showing in this case.

### III. CONCLUSION

For the reasons set out above, we AFFIRM the district court's grant of summary judgment to the defendants.

*07-2081*
*Berryman v. Granholm*